**REDACTED VERSION**
(No Redactions Needed)

No. 14-148C
(Judge Braden)
Bid Protest
FILED UNDER SEAL

_____

## IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS
_____

INNOVATIVE MANAGEMENT CONCEPTS, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

_____

**DEFENDANT'S CONSOLIDATED MOTION TO DISMISS, RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, AND CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

_____

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, Jr.
Director

PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

DEBRA TALLEY
Attorney
U.S. Army Materiel Command
Redstone Arsenal, Alabama

ROBERT B. NEILL
Trial Attorney
U.S. Army Legal Services Agency
Contract and Fiscal Law Division
Fort Belvoir, Virginia

DANIEL B. VOLK
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-7955
Facsimile: (202) 307-0972
Daniel.B.Volk@usdoj.gov

April 29, 2014

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

QUESTIONS PRESENTED .................................................................................... 2

STATEMENT OF THE CASE ................................................................................ 2

ARGUMENT .......................................................................................................... 4

    I.    The Court Should Dismiss The Complaint ............................................ 5

        A.    Legal Standard Under RCFC 12(b)(1) ......................................... 5

        B.    FASA's Ban On Task Order Protests ........................................... 6

        C.    IMC's Protest Does Not Raise A Non-Frivolous Allegation That The Task Order Increases The Scope Of The VETS GWAC ............ 7

        D.    IMC's Other Arguments Also Fail .............................................. 12

    II.    Alternatively, The Court Should Grant Judgment On The Administrative Record For The United States ................................................................. 12

        A.    Legal Standard Under RCFC 52.1(c) .......................................... 12

        B.    IMC Has Not Identified A Procurement Decision Lacking A Rational Basis Or A Violation Of Regulation Or Procedure .................... 13

            1.    The Task Order Does Not Increase The Scope Of The VETS GWAC ............................................................. 13

            2.    The Army Did Not Rely Upon Undisclosed Evaluation Criteria ............................................................................. 14

            3.    IMC's Allegations Of Bias Are Baseless ...................... 16

        C.    IMC Is Not Entitled To Injunctive Relief .................................. 17

CONCLUSION ..................................................................................................... 21

## **TABLE OF AUTHORITIES**

## CASES

*A & D Fire Protection, Inc. v. United States*,
   72 Fed. Cl. 126 (2006)..................................................................................................... 6

*Aircraft Charter Solutions, Inc. v. United States*,
   109 Fed. Cl. 398 (2013)................................................................................................. 17

*Ajilon Prof'l Staffing, PLC v. Kubicki*,
   503 F. Supp. 2d 358 (D.D.C. 2007)............................................................................. 19

*AR Sales Co., Inc. v. United States*,
   49 Fed. Cl. 621 (2001)................................................................................................... 20

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006) ........................................................................................................ 5

*Axiom Res. Mgmt., Inc. v. United States*,
   564 F.3d 1374 (Fed. Cir. 2009) ................................................................................... 13

*Baird Corp. v. United States*,
   1 Cl. Ct. 662 (1983)....................................................................................................... 17

*BayFirst Solutions, LLC v. United States*,
   104 Fed. Cl. 493 (2012)................................................................................................... 6

*Blue & Gold Fleet, L.P. v. United States*,
   492 F.3d 1308 (Fed. Cir. 2007) .................................................................... 9, 10, 14

*Chameleon Integrated Servs., Inc. v. United States*,
   111 Fed. Cl. 564 (2013)................................................................................................... 7

*Citizens to Preserve Overton Park v. Volpe*,
   401 U.S. 402 (1971) ...................................................................................................... 13

*COMINT Sys. Corp. v. United States*,
   700 F.3d 1377 (Fed. Cir. 2012) ................................................................................. 10

*Curtiss-Wright v. McLucas*,
   381 F.Supp. 657 (1974) .................................................................................................. 9

*Dairy Sales Corp. v. United States*,
   593 F.2d 1002 (Ct. Cl. 1979)....................................................................................... 20

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ..................................................................................................... 18

*Eli Lilly & Co. v. Am. Cyanamid Co.*,
  82 F.3d 1568 (Fed. Cir. 1996) ..................................................................................... 18

*Emery Worldwide Airlines, Inc. v. United States*,
  264 F.3d 1071 (Fed. Cir. 2001) ................................................................................... 13

*Eskridge Research Corp. v. United States*,
  92 Fed. Cl. 88 (2010).................................................................................................... 19

*Foundation Health Fed. Servs. v. United States*,
  No. 93-1717 NHJ, 1993 WL 738426 (D.D.C. Sept. 23, 1993) ................................. 18

*Galen Med. Assocs., Inc. v. United States*,
  369 F.3d 1324 (Fed. Cir. 2004) ...................................................................... 13, 14, 16

*Gen. Builders Supply Co. v. United States*,
  409 F.2d 246 (Ct. Cl. 1969)......................................................................................... 19

*Glendale Fed. Bank, FSB v. United States*,
  378 F.3d 1308 (Fed. Cir. 2004) ................................................................................... 19

*Henke v. United States*,
  60 F.3d 795 (Fed. Cir. 1995) ......................................................................................... 5

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
  238 F.3d 1324 (Fed. Cir. 2001) ................................................................................... 13

*Innovative Mgmt. Concepts, Inc. v. United States*,
  114 Fed. Cl. 257 (2014)................................................................................................. 4

*Innovative Mgmt. Concepts, Inc.*,
  B-408070.2 (Comp. Gen. Dec. 4, 2013)........................................................................ 4

*Kalvar Corp., Inc. v. United States*,
  543 F.2d 1298 (Ct. Cl. 1976)....................................................................................... 20

*Keco Industries v. United States*,
  492 F.2d 1200 (Ct. Cl. 1974)....................................................................................... 19

*Minor Metals, Inc. v. United States*,
  38 Fed. Cl. 379 (1997).................................................................................................. 17

iv

*Nolan Bros., Inc. v. United States*,
    405 F.2d 1250 (Ct. Cl. 1969)............................................................................ 20

*OAO Corp. v. United States*,
    49 Fed. Cl. 478 (2001)................................................................................... 17

*PGBA, LLC v. United States*,
    389 F.3d 1219 (Fed. Cir. 2004) ..................................................................... 17

*Pines Residential Treatment Center, Inc. v. United States*,
    444 F.3d 1379 (Fed. Cir. 2006) ....................................................................... 5

*Reynolds v. Army & Air Force Exch. Serv.*,
    846 F.2d 746 (Fed. Cir. 1988) ......................................................................... 5

*Rocovich v. United States*,
    933 F.2d 991 (Fed. Cir. 1991) ......................................................................... 5

*Savantage Fin. Servs., Inc. v. United States*,
    86 Fed. Cl. 700 (2009),.................................................................................... 7

*Sierra Military Health Servs. v. United States*,
    58 Fed. Cl. 573 (2003).................................................................................... 19

*SRA Int'l, Inc. v. United States*,
    114 Fed. Cl. 247 (2014)............................................................................... 6, 7

*Torncello v. United States*,
    681 F.2d 756 (Ct. Cl. 1982)........................................................................... 19

*William Green Constr. Co. v. United States*,
    477 F.2d 930 (Ct. Cl. 1973)........................................................................... 19

## STATUTES AND REGULATIONS

10 U.S.C. § 2304c(e)(1)............................................................................ passim

28 U.S.C. § 1491(b)(4) ..................................................................................... 12

41 U.S.C. § 4106(f)(1) ......................................................................................... 6

41 U.S.C. §§ 6701-6707 ...................................................................................... 4

5 U.S.C. § 706....................................................................................................... 12

v

FAR 16.505 ................................................................................................................................ 3

FAR 22.1006 ........................................................................................................................ 8, 14

FAR 22.1015 .............................................................................................................................. 9

FAR 52.222-41 .................................................................................................................. 3, 8, 10

FAR 52.222-42 ....................................................................................................................... 3, 8

FAR 52.222-43 ........................................................................................................................ 3. 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Bid Protest

| | | |
|---|---|---|
| INNOVATIVE MANAGEMENT CONCEPTS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14-148C (Judge Braden) |
| THE UNITED STATES, | ) ) | FILED UNDER SEAL |
| Defendant. | ) ) | |

**DEFENDANT'S CONSOLIDATED MOTION TO DISMISS, RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, AND CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rules 12(b)(1) and 52.1(c) Rules of the United States Court of Federal Claims (RCFC), and the Court's March 5, 2014 scheduling order, defendant, the United States, respectfully submits this consolidated motion to dismiss, response to the April 1, 2014 motion for judgment on the administrative record submitted by plaintiff, Innovative Management Concepts, Inc. (IMC), and cross-motion for judgment on the administrative record.

The Court lacks jurisdiction to entertain the allegations in the complaint because they are barred by the statutory prohibition on task order protests brought in this Court.  IMC's sole argument pertaining to an exception to that ban—that the task order increases the scope of the contract—is premised upon a misreading of the contract.  If the Court does not dismiss the complaint for lack of jurisdiction, it should grant judgment on the administrative record for the United States.

## QUESTIONS PRESENTED

1.      Whether the task order awarded increases the scope of the underlying

Government-wide acquisition contract (GWAC).

2.      Assuming that the Court possesses jurisdiction to entertain the complaint, whether

IMC has identified a prejudicial error in the procurement process such that IMC is entitled to the

injunctive relief it seeks.

## STATEMENT OF THE CASE

In this protest, IMC seeks to challenge the United States Army's award of a task order to

Veteran Engineering and Technology, LLC (Veteran Engineering).  The task order was awarded

under a multiple-award indefinite delivery, indefinite quantity contracting program known as the

Veterans Technology Services (VETS),[1] a GWAC set aside for service-disabled-veteran-owned

small businesses.  Administrative Record (AR) 76, Mar. 11, 2014.[2]  The United States General

Services Administration (GSA), which administers VETS, has entered into dozens of VETS

GWACs with eligible small businesses, including Veteran Engineering and IMC.[3]  Federal

agencies such as the Army issue task orders under a VETS GWAC.

On December 18, 2006, GSA awarded a VETS GWAC to Veteran Engineering.  AR1.

The VETS GWAC has been modified on several occasions.  AR2-70.  Modification No. PS 13,

effective May 31, 2012, updated the contract clauses incorporated by reference into the VETS

GWAC to include, among other clauses, Federal Acquisition Regulation (FAR) clause

---

[1] The awardee, Veteran Engineering, is sometimes referred to as VET in the administrative
record.  To avoid confusion with the VETS GWAC, we refer to the awardee as Veteran
Engineering in this brief.

[2] *See generally* http://www.gsa.gov/portal/category/25299.

[3] A list of VETS contract holders as of January 31, 2014 is available at
http://www.gsa.gov/portal/content/102424.

52.222-41, "Service Contract Act of 1965 (Nov. 2007)."  AR48; *see also* AR64 (also

incorporating FAR 52.222-41 in Modification No. PS 14).  The VETS Ordering Guide instructs

ordering agencies to "apply SCA [Service Contract Act] wages and include SCA related clauses

in the TOR [task order request] and resulting task order for the SCA-covered work."  AR87; *see*

*also* AR90 ("In addition to FAR 16.505 requirements, OCOs [ordering contracting officers] may

address the following matters in task order requests . . . Service Contract Act applicability . . . .").

On August 30, 2012, the Army issued a task order request for proposals under the VETS

GWAC program.  AR220; Pl. Mot. 1.  The solicitation sought information technology services to

support all activities located at Fort Dix, New Jersey.  AR220.  On September 20, 2012, the

Army revised the task order solicitation, incorporating the following clauses by reference: FAR

52.222-41, Service Contract Act of 1965 (Nov. 2007); and FAR 52.222-43, Fair Labor Standards

Act and Service Contract Act—Price Adjustment (Multiple Year and Option Contracts) (Sept.

2009).  AR280; *see also* AR281 (incorporating the full text of FAR 52.222-42).

On February 22, 2013, the Army awarded the task order to IMC.  AR492.  Veteran

Engineering protested the award at the Government Accountability Office (GAO) on March 8,

2013.  AR640.  On March 27, 2013, the Army notified GAO that it would take corrective action.

AR671.  In its corrective action notice submitted to GAO, the Army acknowledged Veteran

Engineering's allegations "that the Army did not evaluate its proposal and [the] awardee's

proposal in accordance with the stated evaluation criteria."  *Id.*  The Army advised GAO that it

"agree[d] that there were errors in the evaluations and [would] take corrective action to re-

evaluate the proposals and make a new best value decision."  *Id.*  On March 28, 2013, GAO

dismissed Veteran Engineering's protest.  AR673; *Veteran Eng'g & Tech., LLC*, B-408070

(Comp. Gen. Mar. 28, 2013).  On May 1, 2013, the Army terminated for convenience the task

order it had awarded to IMC.  AR674.

After taking corrective action to re-evaluate proposals, the Army decided to award the

task order to Veteran Engineering on August 12, 2013.  AR702-AR712.  Wage determinations

by United States Department of Labor for SCA-covered positions in the Fort Dix area were

included both in the original task order awarded to IMC but later terminated, AR611, as well as

the task order issued to Veteran Engineering following corrective action, AR829.

IMC protested the award to Veteran Engineering at GAO on August 27, 2013.  AR858.

In its GAO protest, IMC alleged that the Army had relied upon undisclosed evaluation criteria,

and it further challenged the Army's best value determination.  AR858-867.  IMC did not argue

before GAO that the task order increased the scope of the VETS GWAC.  GAO denied IMC's

protest on December 4, 2013.  AR905; *Innovative Mgmt. Concepts, Inc.*, B-408070.2 (Comp.

Gen. Dec. 4, 2013).

On February 4, 2014, IMC filed a protest in this Court, which was dismissed without

prejudice on February 7, 2014.  *Innovative Mgmt. Concepts, Inc. v. United States*, Judgment, No.

14-100C (Fed. Cl. Feb. 7, 2014); *Innovative Mgmt. Concepts, Inc. v. United States*, 114 Fed. Cl.

257 (2014).  IMC re-filed this protest on February 24, 2014.

## ARGUMENT

IMC's arguments are meritless.  The task order did not increase the scope of the VETS

GWAC, which expressly contemplates the applicability of the Service Contract Act of 1965,

(SCA), 41 U.S.C. §§ 6701-6707, and incorporates the SCA FAR clauses to the extent they apply

to particular task orders.  IMC's interpretation of the VETS GWAC is plainly contradicted by the

administrative record.  Accordingly, the Court lacks jurisdiction to entertain IMC's allegations

4

and should dismiss the complaint.  Even if the Court possessed jurisdiction, IMC has not

identified any basis for the Court to disturb the Army's award of the task order to Veteran

Engineering.

## I.      The Court Should Dismiss The Complaint

The Federal Acquisition Streamlining Act (FASA), Pub. L. No. 103-355, § 1004, 108

Stat. 3243, 3264 (1994), prohibits the Court from entertaining this task-order protest.  IMC's

argument that the task order exceeded the scope of VETS GWAC is premised on a misreading of

the GWAC.  IMC's protest in this Court is barred by 10 U.S.C. § 2304c(e)(1), and the Court

should dismiss the complaint.

### A.      Legal Standard Under RCFC 12(b)(1)

When a motion to dismiss under RCFC 12(b)(1) challenges the Court's subject-matter

jurisdiction, the plaintiff bears the burden of proving jurisdiction by a preponderance of the

evidence.  *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

Undisputed factual allegations contained in the complaint must be treated as true.  *See Henke v.*

*United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  However, in resolving disputes regarding

jurisdictional facts, the Court may look beyond the pleadings.  *See Rocovich v. United States*,

933 F.2d 991, 993 (Fed. Cir. 1991).  If the Court finds that it lacks subject-matter jurisdiction, it

must dismiss the complaint.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

"Regardless of a party's characterization of its claim," the Court must "look to the true nature of

the action in determining the existence or not of jurisdiction."  *Pines Residential Treatment*

*Center, Inc. v. United States*, 444 F.3d 1379, 1380 (Fed. Cir. 2006).

B.    **FASA's Ban On Task Order Protests**

Congress enacted FASA in 1994, aiming to reform Federal procurement by "streamlining and simplifying" the Government's buying practices, in part by limiting bid protests.  *A & D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126, 133 (2006) (quoting 140 Cong. Rec. H9240, H9240 (1994) (statement of Rep. Conyers)).  FASA "precludes the court from adjudicating protests 'in connection with the issuance or proposed issuance of a task or delivery order,' unless the protest is 'on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued.'"  *SRA Int'l, Inc. v. United States*, 114 Fed. Cl. 247, 251 (2014); 10 U.S.C. § 2304c(e)(1) (Armed Services); 41 U.S.C. § 4106(f)(1) (formerly 41 U.S.C. § 253j(e)) (civilian agencies).

Specifically, 10 U.S.C. § 2304c(e)(1) provides:

> (1) A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for—
>
> (A)    a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or
>
> (B)    a protest of an order valued in excess of $10,000,000.
>
> (2) Notwithstanding section 3556 of title 31, the Comptroller General of the United States shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

10 U.S.C. § 2304c(e)(1).  "This court has consistently interpreted the ban as prohibiting task order protests in this court on any grounds other than the specific excepted allegations of excessive scope, period or value of the proposed task order."  *BayFirst Solutions, LLC v. United*

*States*, 104 Fed. Cl. 493, 502 (2012); *see also Chameleon Integrated Servs., Inc. v. United States*, 111 Fed. Cl. 564, 570 (2013) ("Our prior precedent shows that FASA applies broadly.").[4]

The FASA task-order protest ban provides an exception for protests brought "on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued."  10 U.S.C. § 2304c(e)(1)(A).  IMC does not contend that this task order increases the period or maximum value of the VETS GWAC.  Rather, IMC argues that the manner in which the awardee, Veteran Engineering, proposed to staff the project to accomplish the work required by the task order would exceed the scope of the VETS GWAC.

C.     **IMC's Protest Does Not Raise A Non-Frivolous Allegation That The Task Order Increases The Scope Of The VETS GWAC**

IMC concedes that this task order was issued under the VETS GWAC. Pl. Mot. 2 ("It is undisputed that the Task Order was issued to VET under the VETS GWAC . . . .").  In its complaint, IMC acknowledges that a protest to a task order awarded under "the VETS GWAC program normally is not in the [jurisdictional] domain of this court."  Compl. ¶ 7.  In its motion for judgment on the administrative record, IMC asserts only one basis for its belief that the Court possesses jurisdiction in this case.  According to IMC, "the VETS GWAC expressly provides that the SCA does not apply to VETS GWAC contracts."  Pl. Mot. 2.  IMC is mistaken.

"The SCA requires that every procurement or contract valued in excess of $2,500.00, entered into with the United States for the principal purpose of furnishing services through the use of service employees, contain provisions specifying the wages to be paid and the fringe benefits to be furnished to various classes of service employees."  *Savantage Fin. Servs., Inc. v.*

---

[4] GAO had jurisdiction to entertain IMC's protest under § 2304c(e)(1)(B), which allows GAO to review protests in connection with issuance of task orders valued in excess of $10,000,000. AR906 n.1 ("We have jurisdiction . . . because the estimated value of the task order exceeds $10 million.").  That jurisdictional grant, however, is exclusive to GAO.  10 U.S.C. § 2304c(e)(2); *see SRA Int'l, Inc.*, 114 Fed. Cl. at 252.

7

*United States*, 86 Fed. Cl. 700, 706 (2009), *aff'd,* 595 F.3d 1282 (Fed. Cir. 2010).  When the

SCA applies to a procurement, FAR 22.1006 instructs contracting officers to insert FAR clauses

implementing SCA requirements, as IMC correctly points out.  Pl. Mot. 5.  IMC does not

acknowledge, however, that the relevant SCA FAR clauses, FAR 52.222-41, -43, were

incorporated both into the VETS GWAC, AR48, AR64, and the task order request for proposals,

AR280; *see also* AR281 (also incorporating FAR 52.222-42 into task order).

     Review of GSA's ordering guide confirms that SCA-covered task orders are within the

scope of the VETS GWAC.  The ordering guide expressly instructs ordering contracting officers

to "apply SCA wages and include SCA related clauses in the [task order request] and resulting

task order for the SCA-covered work," AR87, which the Army did in this case.

     In support of its contention that the VETS GWAC prohibits task orders "that heavily rely

on SCA-covered labor," Pl. Mot. 5, IMC points to a single provision contained in the basic

VETS GWAC (before modifications), which provides:

> B.4.5   Application of the Service Contract Act (SCA)
>
> The vast majority of labor categories identified in this solicitation
> are professional IT positions and thus exempt from the SCA.  In
> accordance with Title 29 of the Code of Federal Regulations, Labor
> Standards for Federal Service Contract, the General Services
> Administration (GSA) considers the Service Contract Act (SCA) to
> not apply to this contract based upon its principal purpose.

Pl. Mot. 5 (quoting clause B.4.5).[5]  Contrary to IMC's arguments, this provision does not

establish that the task order issued to Veteran Engineering exceeded the scope of the VETS

GWAC.  First, this provision implicitly acknowledges that some of the labor categories

contemplated would be covered by the SCA.  IMC's arguments are based on the premise that the

---

[5] The basic contract is available at http://www.gsa.gov/portal/getMediaData?mediaId=152163.

VETS GWAC prohibits acquisition of services under task orders to which the SCA does apply, but the plain text of the provision IMC relies upon, B.4.5 of the basic GWAC (before modifications), quoted above, imposes no such prohibition.

Even if such a prohibition could be inferred from this provision, which it cannot, the modifications to the VETS GWAC still would supersede the basic text of the contract.  Thus, to the extent any such prohibition ever existed, it was no longer in effect as of May 31, 2012, when Modification PS 13 to the VETS GWAC was issued incorporating SCA FAR clauses.  AR34, AR48.[6]  Regardless of any doubt that could have existed before that modification, by the time the Army issued the task order solicitation at issue in this case on August 30, 2012, AR220, the VETS GWAC undoubtedly contemplated acquisition of SCA-covered services because it incorporated SCA clauses, which were also incorporated into the task order solicitation, AR280.

Even if there were some discrepancy between GWAC clause B.4.5 and the task order, which there is not, IMC waived any challenge it could have raised in this regard by failing to assert it before award of the task order.  The task order request for proposals included relevant SCA clauses, AR280-281, putting IMC on notice before it submitted its proposal that the Army considered the SCA to be applicable to this task order.  As a consequence of IMC not pursuing a protest on this basis during the task order solicitation process, it has waived any opportunity to do so now.  *See Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

In *Blue & Gold Fleet*, the United States Court of Appeals for the Federal Circuit ruled that the protester's "assertion that the proposals should have been evaluated according to the [Service Contract] Act is a challenge to the solicitation."  *Id.*  The Federal Circuit held "that a

---

[6] Modifying a contract after award to make the SCA applicable, when necessary, is not only lawful, *see Lockheed Aircraft Serv. Co.*, 53 Comp. Gen. 412 (1973); *see also Curtiss-Wright v. McLucas*, 381 F.Supp. 657 (1974), but also expressly contemplated by the FAR in certain circumstances, FAR 22.1015.

9

party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Id.* Because Blue and Gold Fleet knew or should have known that the procuring agency was treating the SCA as inapplicable under the solicitation, it waived any challenge based on an argument that the SCA should have been considered applicable by failing to pursue such a protest before award. *See id.*

Like in *Blue and Gold Fleet*, IMC was on notice that the Army considered the SCA to be applicable for this task order because the task order request for proposals included SCA FAR clauses. AR280-281. Accordingly, even if IMC had a legitimate argument that the Army's SCA applicability determination for this task order is either wrong or somehow inconsistent with the VETS GWAC, which it is not, IMC waived its ability to pursue such a protest by failing to assert it before the close of the bidding process. *See Blue & Gold Fleet, L.P.*, 492 F.3d at 1313; *see also COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012) ("we think the reasoning of *Blue & Gold* applies to all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so").

That IMC could not have known before award how many SCA-covered positions Veteran Engineering would include in its proposal is irrelevant. Under both the task order solicitation and the task order as issued, the incorporated SCA clauses require the contractor to comply with the SCA by complying with the Department of Labor's wage determinations for SCA-covered positions. *See* FAR 52.222-41(c)(1) ("Each service employee employed in the performance of this contract . . . shall be paid not less than the minimum monetary wages and shall be furnished

fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor . . . .").

Moreover, IMC's theory—that a task order can be found to exceed the scope of a GWAC based on the manner in which the awardee's proposal indicated that it would accomplish the work required by the task order—is fundamentally unsound. Whether a task order exceeds the scope of the GWAC must be judged not by the contents of the awardee's proposal but rather by the statement of work for the task order, which is found in the task order solicitation; hence, the obligation to pursue such a protest before award, if at all. The awardee's proposal does not dictate the work to be performed. Because a proposal must respond to the task order as solicited, the contents of the proposal cannot change the scope of a task order, and therefore cannot result in a task order award increasing the scope of the GWAC where the task order solicitation did not.

By arguing about the contents of the awardee's proposal, a protester is, at best, arguing about the agency's evaluation of the awardee's proposal. Indeed, post-award protest arguments regarding SCA applicability can only relate to whether the agency properly evaluated proposals, and not the scope of a contract. As a matter of law, the SCA either does or does not apply to a particular contract or task order. The answer to a question of SCA applicability cannot enlarge the scope of a contract. At most, if SCA applicability was unaddressed in the solicitation or the agency's evaluation of proposals was contrary to the solicitation—circumstances not present for this task order and task order solicitation, which indicated, consistent with the GWAC, as modified, that the SCA would apply—a protester might be able to argue post-award that an erroneous legal determination regarding SCA applicability induced an agency to misevaluate a proposal. But such theoretical arguments regarding evaluation of proposals would have nothing

to do with the scope of a contract, and therefore cannot be within the narrow exception to

FASA's ban on task order protests in this Court.

IMC has not raised a non-frivolous argument under which the Court could conclude that

that the task order issued to Veteran Engineering increases the scope of the VETS GWAC.

Rather, IMC challenges the award of the task order, which is not within the Court's jurisdiction.

10 U.S.C. § 2304c(e)(1).  Accordingly, the Court should dismiss the complaint.

### D.     IMC's Other Arguments Also Fail

Even assuming the Court possessed jurisdiction to entertain an allegation that the task

order increases the scope of the VETS GWAC, which it does not, such a conclusion could not

bring any of the other protest allegations IMC raises within the Court's jurisdiction.  Under 10

U.S.C. § 2304c(e)(1), this Court has no authority to entertain task order protests such as this

except "on the ground that the order increases the scope, period, or maximum value of the

contract which the order is issued."  *Id.*  IMC's contentions that the Army's re-evaluation relied

upon undisclosed criteria and was biased in favor of the awardee are facially outside of these

narrow exceptions, and therefore must be dismissed.

## II.     Alternatively, The Court Should Grant Judgment On The Administrative Record For The United States_____

Even assuming the Court possessed jurisdiction to entertain IMC's arguments, which it

does not, they still would be without merit, and the United States would be entitled to judgment

in its favor on the administrative record.

### A.     Legal Standard Under RCFC 52.1(c)

On cross-motions for judgment on the administrative record submitted pursuant to RCFC

52.1(c), the Court's bid protest review is limited by the standard set forth in the Administrative

Procedure Act, 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4).  Under that standard, the Court may set

aside an agency's procurement action if either "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (citation and quotation marks omitted). "A court evaluating a challenge on the first ground must determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Id.* (quotation marks omitted). "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id.* (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001)).

Agency procurement decisions are entitled to a "presumption of regularity." *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971); *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001). The protester bears the burden of demonstrating that the agency's decision was arbitrary or unlawful. *See Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004).

### B.   IMC Has Not Identified A Procurement Decision Lacking A Rational Basis Or A Violation Of Regulation Or Procedure

#### 1.   The Task Order Does Not Increase The Scope Of The VETS GWAC

Although IMC devotes most of its brief to arguing that the task order exceeded the scope of the VETS GWAC, IMC does not actually identify any specific legal basis flowing from this argument under which the Court could set aside the task order award. IMC does not expressly argue that the Army's decision to award the task order to Veteran Engineering lacked a rational basis or violated any specifically identified regulation.[7]

---

[7] Although 10 U.S.C. § 2304c(e)(1) contemplates protests "on the ground that the order increases the scope, period, or maximum value of the contract which the order is issued," *id.*, IMC, having

To the extent that IMC is arguing that the award decision lacked a rational basis because services covered by the SCA cannot be acquired under the VETS GWAC, IMC's premise is contradicted by the administrative record.  As we explained above, the VETS GWAC incorporates SCA FAR clauses, AR48, and the ordering guide instructs ordering contracting officers to "apply SCA wages and include SCA related clauses . . . for SCA-covered work," AR87.  Moreover, even if it was not based upon a misinterpretation of the VETS GWAC, this protest would still be barred by the waiver rule adopted by the Federal Circuit in *Blue and Gold Fleet* because the solicitation for the task order unambiguously indicated that the SCA would apply by incorporating the SCA clauses to be inserted under FAR 22.1006, and IMC failed to object pre-award.  *See* 492 F.3d at 1313.

### 2.      The Army Did Not Rely Upon Undisclosed Evaluation Criteria

IMC argues that the Army relied upon undisclosed criteria in selecting Veteran Engineering for award of the task order after corrective action.  Pl. Mot. 8-9.  As discussed above, IMC does not even offer an argument as to how the Court could have jurisdiction to entertain this allegation, and indeed it does not.  Section 2304c(e)(1) of title 10 bars task order protests in this Court except "on the ground that the order increases the scope, period, or maximum value of the contract which the order is issued."  *Id.*  IMC's allegation that the Army relied upon undisclosed evaluation criteria is not within any of these exceptions, and therefore cannot be entered by the Court.

---

had an opportunity to compete for the task order and having not objected until after the award was made to a competitor, is not within the class this provision was intended to protect.  *See generally Galen Med. Assocs., Inc.*, 369 F.3d at 1330 ("Not every regulation is established for the benefit of bidders as a class, and still fewer may create enforceable rights for the awardee's competitors.").

Even assuming that the Court possessed jurisdiction to entertain this allegation, it still would be without merit.  IMC asserts that the task order solicitation did not "reasonably notify offerors that the evaluation criteria would include a focus on the number of personnel, irrespective of the qualifications of those personnel.  GAO correctly rejected the argument. AR908 ("In rejecting the protester's argument, we find the premise of the challenge, that consideration of the total personnel was not reasonably related to the agency's evaluation of the firms' resources, to be fundamentally at odds with the protester's own contemporaneous understanding of the solicitation as reflected by the information contained in its proposal."). Regardless, the Army's consideration of total personnel was not a criterion for selection, but rather a distinguishing factor that the Army appropriately took into account in selecting an awardee.

IMC also argues that the source selection authority found that IMC's proposal presented the best value.  Pl. Mot. 9 (quoting AR711).  Although IMC has indeed identified a typographical error in the source selection memorandum, it mischaracterizes the document by quoting only the sentence containing the typographical error and disregarding the remainder of the document.  The "Summary" at the end of the memorandum provides:

> Based upon my independent assessment of the analysis accomplished by the Technical Evaluation Committee as well as the price and past performance reports, giving appropriate consideration to the evaluation criteria and their relative importance, I determine that contract award can be made without discussions and determine that Veteran Engineering & Technology, LLC's proposal provides the best value to the government . . . .
>
> Furthermore, . . . I determine the price submitted by Veteran Engineering & Technology, LLC . . . to be fair and reasonable. Therefore, it is the determination of the undersigned that *IMC's* proposal provides the best value to the government of all seven submitted proposals.  Award will be made to Veteran.

15

AR710-711 (emphasis added to show typographical error).  When read in context, it is clear that

the only error contained in the language IMC seizes upon is a typographical one, which cannot

demonstrate a lack of a rational basis or a prejudicial violation of regulation or procedure.

### 3.      IMC's Allegations Of Bias Are Baseless

IMC argues that the Army's selection of Veteran Engineering "was flawed and the result

of bias."  Pl. Mot. 9-10.  Once again, IMC does not even offer an argument as to how the Court

could have jurisdiction to entertain this allegation, and indeed it does not.  This allegation is not

within any of the exceptions to the ban on task order protests in this Court, 10 U.S.C.

§ 2304c(e)(1), and the allegation must therefore be ignored or dismissed by the Court.

Even assuming the Court possessed jurisdiction to entertain this allegation, it would be

baseless.  IMC's assertion that the contracting officer's award decision was "flawed and

bias[ed]" is based solely upon IMC's belief that the Army failed to recognize that its proposal

was truly the best one.  Specifically, IMC maintains the view that, even though Veteran

Engineering proposed to accomplish the work with a greater number of personnel, IMC's fewer

total personnel would actually have been more advantageous to the Government.  Pl. Mot. 10

("This is demonstrated by the Army's illogical reasoning as to why a higher number of personnel

is advantageous . . . . In reality, IMC's . . . workers will provide swifter reaction time than VET's

. . . .").  The determination about which IMC complains is a matter committed to the discretion

of the source selection official, not to IMC.  It does not demonstrate bias, which carries a

heightened evidentiary burden that IMC's allegations do not even approach.  *See Galen Med.*

*Assocs., Inc.*, 369 F.3d at 1337 ("In order to prevail on an allegation of bad faith, [protester] must

show 'almost irrefragable' proof.").

## C.     IMC Is Not Entitled To Injunctive Relief

As discussed in section I. above, the Court does not possess jurisdiction to entertain the complaint. Accordingly, the Court lacks authority to order injunctive relief. Even if the Court possessed jurisdiction, injunctive relief would not be warranted in this case.

In deciding whether to grant a permanent injunction, the Court considers (1) whether "the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004). The protester bears the burden to "establish its right to such drastic relief by means of clear and convincing evidence." *Baird Corp. v. United States*, 1 Cl. Ct. 662, 664 (1983).

IMC cannot succeed on the merits for the reasons discussed above, and the injunctive relief inquiry should end at that step. *See Aircraft Charter Solutions, Inc. v. United States*, 109 Fed. Cl. 398, 416 (2013).

Even if IMC could succeed on the merits of its protest, IMC has not demonstrated that it will suffer irreparable harm if the Court withholds injunctive relief. The only harm IMC alleges that it will suffer is the lost opportunity to earn profits under the task order. Profits from performing this task order rightfully belong to Veteran Engineering, not IMC, because Veteran Engineering properly won the task order.

Moreover, lost profits, especially in the abstract, should not be held to constitute irreparable harm. *See OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001) ("These potential losses are primarily monetary. While these losses may be substantial, they are not irreparable."); *Minor Metals, Inc. v. United States*, 38 Fed. Cl. 379, 381-82 (1997) ("Plaintiff's argument

17

amounts to an assertion that its potential lost profits . . . would result in irreparable injury.

However, economic harm without more, does not seem to rise to the level of irreparable injury.")

Protesters routinely point to vague and speculative lost profits as the irreparable harm they will

suffer if a contract award is not set aside, and we recognize that there is case law to support this

proposition.  Nonetheless, non-descript allegations of lost profits should not be enough to

demonstrate irreparable harm.

If lost profits were alone sufficient to establish irreparable harm, every post-award

protestor who prevails on the merits will have also suffered irreparable harm.  Such an outcome

would effectively eliminate a portion of the injunctive relief test, in violation of *eBay Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006).  In *eBay*, the Supreme Court held that the

district court erred when it chose to "adopt certain expansive principles suggesting that

injunctive relief could not issue in a broad swath of cases."  *Id.* at 393.  The Court explained that

"traditional equitable principles do not permit such broad classifications."  *Id.*  Likewise, the

Court found that the court of appeals erred when it chose to articulate a general rule that a

permanent injunction would issue in that type of case.  *Id.*  The Court's reasoning in *eBay*

demonstrates that it is not appropriate to treat bare allegations of lost profits as categorically

adequate to check the box for irreparable harm.  *See id.*; *see also Eli Lilly & Co. v. Am.*

*Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996) (rejecting analysis that "would convert the

'extraordinary' relief of a preliminary injunction into a standard remedy, available whenever the

plaintiff has shown a likelihood of success on the merits").

The better approach is expressed by the United States District Court for the District of

Columbia: "Only economic loss that threatens the survival of a movant's business constitutes

irreparable harm."  *Foundation Health Fed. Servs. v. United States*, No. 93-1717 NHJ, 1993 WL

738426, at *3 (D.D.C. Sept. 23, 1993); *see Ajilon Prof'l Staffing, PLC v. Kubicki*, 503 F. Supp. 2d 358, 362 (D.D.C. 2007).  This position has been cited with approval by this Court.  *See Eskridge Research Corp. v. United States*, 92 Fed. Cl. 88, 99 (2010); *Sierra Military Health Servs. v. United States*, 58 Fed. Cl. 573, 582 (2003).

IMC has not proven that the loss of this task order threatens its survival.  Thus, IMC is effectively asking the Court to order injunction relief—an extraordinary remedy—on the assumption that the potential for lost profits are substantial enough to threaten its survival.  Indeed, that is just one of several assumptions needed to treat lost profits as adequate to show irreparable harm.  Even if the award to Veteran Engineering were set aside, there is no guarantee that IMC would be successful in winning the task order.  *See, e.g.*, *Keco Industries v. United States*, 492 F.2d 1200, 1206 (Ct. Cl. 1974) ("there is no assurance that any bidder would have obtained the award since the Government retains, in its discretion, the right to reject all bids without liability.").  Contractors do not possess a right to Government contracts.

Moreover, even a contractor holding a current contract generally does not enjoy any right to future, unearned profits.  *See Gen. Builders Supply Co. v. United States*, 409 F.2d 246, 249 (Ct. Cl. 1969); *William Green Constr. Co. v. United States*, 477 F.2d 930, 936 (Ct. Cl. 1973) ("This exclusion from relief of unearned profits is a settled policy which has long been accepted and enforced."); *Glendale Fed. Bank, FSB v. United States*, 378 F.3d 1308, 1313 (Fed. Cir. 2004) ("given the speculative nature of such a [anticipated profits] damages claim . . . experience suggests that it is largely a waste of time and effort to attempt to prove such damages.").  In Government contracts, the Government retains the right to terminate the contract for the Government's convenience.  *See Torncello v. United States*, 681 F.2d 756, 759 (Ct. Cl. 1982) ("The [convenience termination] clause is intended to enable the contracting officer to stop or

19

curtail a contractor's performance without involving the government in a breach that would

render it liable for the contractor's anticipatory profits."); *Dairy Sales Corp. v. United States*, 593

F.2d 1002, 1005 (Ct. Cl. 1979) ("The Board was clearly correct in disallowing the claim for

anticipated profits."); *Kalvar Corp., Inc. v. United States*, 543 F.2d 1298, 1303 (Ct. Cl. 1976)

("asserted costs . . . are not recoverable because they clearly pertain only to anticipatory profits,

which are barred by the termination-for-convenience clause"); *Nolan Bros., Inc. v. United States*,

405 F.2d 1250, 1253-54 (Ct. Cl. 1969); *AR Sales Co., Inc. v. United States*, 49 Fed. Cl. 621, 630

(2001) (after a termination for convenience, the contractor "cannot recover either lost profits it

anticipated upon completion of the subject contract").

   If contractors already holding Government contracts lack general entitlement to

anticipated profits for work not performed, such lost profits cannot demonstrate irreparable harm

to a protester who has not yet even been awarded the Government contract.  In the absence of

specific evidence that economic harm such as lost profits will threaten the survival of a business,

the default presumption must remain—in line with basic economic theory—that the business will

direct is capital and resources to other projects and that the loss of this contract will not work

irreparable harm.

   By contrast, if the Government were enjoined from proceeding with the task order

awarded to Veteran Engineering, it would suffer substantial harm.  Costs and other resources will

be expended to terminate the task order for convenience and to reach a termination-for-

convenience settlement with Veteran Engineering, which has been performing the task order for

several months.  The Army would also have to incur the costs of an additional transition period if

a contractor other than Veteran Engineering is ultimately selected.  Moreover, because the

services are critical to the daily operation of information technology resources for all activities

20

located at Fort Dix, if an injunction were issued, the Army would have to enter into a bridge

contract to temporarily obtain these essential services, unless the injunction had a delayed

implementation date to allow for a re-opening of the procurement process.

The public interest does not weight in favor of granting an injunction.  IMC has not

demonstrated any prejudicial error in the procurement process, and therefore there is no basis to

disturb the task order rightfully awarded to Veteran Engineering.

## **CONCLUSION**

We respectfully request the Court to dismiss the complaint for lack of jurisdiction or,

alternatively, grant judgment on the administrative record for the United States.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, Jr.
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

s/Daniel B. Volk

DEBRA TALLEY                    DANIEL B. VOLK
Attorney                       Trial Attorney
U.S. Army Materiel Command     Commercial Litigation Branch
Redstone Arsenal, Alabama      U.S. Department of Justice
                               P.O. Box 480
ROBERT B. NEILL                Ben Franklin Station
Trial Attorney                 Washington, D.C. 20044
U.S. Army Legal Services Agency  Telephone: (202) 353-7955
Contract and Fiscal Law Division  Facsimile: (202) 307-0972
Fort Belvoir, Virginia         Daniel.B.Volk@usdoj.gov

April 29, 2014                  Attorneys for Defendant