# In the United States Court of Federal Claims

No. 14-148 C
Filed under seal: October 23, 2014
Reissued for publication: November 18, 2014[1]

|  |  |
|---|---|
| ****************************************<br><br><br><br><br><br><br><br>INNOVATIVE MANAGEMENT<br>CONCEPTS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant.<br><br>**************************************** | Administrative Procedures Act,<br>   5 U.S.C. § 701;<br>Competition in Contracting Act,<br>   41 U.S.C. § 253;<br>Federal Acquisition Regulations<br>   ("FAR") 48 C.F.R. §§ 2.101<br>   (Federal Acquisition Regulations<br>   Systems: Definitions), 22.1006<br>   (Solicitation Provisions And<br>   Contract Clauses), 52.212-5(c)<br>   (Contract Terms and Conditions<br>   Required To Implement Statutes<br>   Or Executive Orders—<br>   Commercial Items), 52.222-41(c)<br>   (Service Contract Labor<br>   Standards), 52.222-53 (Exemption<br>   From Application Of The Service<br>   Contract Labor Standards);<br>Federal Acquisition Streamlining<br>   Act, 10 U.S.C. § 2304c (Armed<br>   Services);<br>Jurisdiction;<br>Service Contract Act, 41<br>   U.S.C. § 6702 (Contracts To<br>   Which Service Contract Act<br>   Applies) |

**Eric Scott Crusius**, Centre Law Group, LLC, Vienna, Virginia, Counsel for the Plaintiff.

**Daniel B. Volk**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

---

[1] On October 23, 2014, the court forwarded a sealed copy of this Memorandum Opinion and Final Order to the parties to delete from the public version any confidential and/or privileged information, and note any citation or editorial errors requiring correction. The court has incorporated some of these comments and corrected or clarified certain portions herein.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

A month ago, the United States Court of Appeals for the Federal Circuit held that the Federal Acquisition Streamlining Act of 1994 "effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order[.]" *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014). The procurement in this case concerns a task order.

## I. RELEVANT STATUTORY AND REGULATORY BACKGROUND.

### A. The Federal Acquisition Streamlining Act.

The Federal Acquisition Streamlining Act ("FASA") precludes the court from adjudicating protests "in connection with the issuance or proposed issuance of a task or delivery order," unless the protest is "on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." 10 U.S.C. § 2304c(e) (Armed Services).

### B. The Service Contract Act.

The Service Contract Act ("SCA") "applies to any contract or bid specification for a contract . . . that (1) is made by the Federal Government or the District of Columbia; (2) involves an amount exceeding $2,500.00; and (3) has as its principal purpose the furnishing of services in the United States through the use of service employees." 41 U.S.C. § 6702(a). If these three criteria are met, "the SCA requires that [the contract or bid specification] contain provisions specifying the wages to be paid and the fringe benefits to be furnished to various classes of service employees." *Savantage Fin. Servs., Inc. v. United States*, 86 Fed. Cl. 700, 706 (2009), *aff'd*, 595 F.3d 1282 (Fed. Cir. 2010). When the SCA applies, contracting officers must insert specified Federal Acquisition Regulation ("FAR") clauses into the contract. *See* 48 C.F.R. § 22.1006.

## II. RELEVANT FACTUAL BACKGROUND.[2]

The Veterans Technology Services Government-Wide Acquisition Contract (the "VETS GWAC") allows service-disabled veteran-owned small businesses ("SDVOSBs") to bid on information technology ("IT") services for the federal government. AR 76 (2012 VETS Ordering Guide). The VETS GWAC applies to Systems Operations and Maintenance, as well as Information Systems Engineering. AR 77. In this case, the Administrative Record verifies that

---

[2] The relevant facts discussed herein were derived from the February 24, 2014 Complaint ("Compl.") and the Administrative Record (AR 1–909).

the required FAR clauses (52.222-41 and 52.222-53) were incorporated into the VETS GWAC.[3] The VETS GWAC, however, specifically exempts professional IT positions from the SCA:

> The vast majority of labor categories identified in this solicitation are professional IT positions and thus exempt from the SCA. In accordance with Title 29 of the Code of Federal Regulations, Labor Standards for Federal Service Contract, the General Services Administration (GSA) considers the Service Contract Act (SCA) to not apply to this contract based upon its principal purpose.

VETS GWAC § B.4.5.

The 2012 VETS Ordering Guide[4] recommends that "OCOs [Ordering Contracting Officers] should apply SCA wages and include SCA related clauses in the TOR [Task Order Request] and resulting task order for the SCA-covered work." AR 87.

On December 18, 2006, the General Services Administration ("GSA") awarded Veteran Engineering and Technology, LLC ("Veteran Engineering") a VETS GWAC, to bid on future task orders. AR 1–71. The GSA modified the contract several times prior to August 30, 2012, including incorporating required SCA clauses. AR 2–70.

On December 19, 2006, GSA issued Amendment PS 13, incorporating the SCA labor standards into Veteran Engineering's VETS GWAC.[5] AR 34, 47–48. On May 23, 2012, Veteran Engineering signed Amendment PS 13 and a GSA Contracting Officer signed it on May 31, 2012. AR 34.

On December 19, 2006, GSA also issued Amendment PS 14, also incorporating the "Fair Labor Standards Act and Service Contract Labor Standards—Price Adjustment" into Veteran Engineering's VETS GWAC. AR 64. On October 25, 2012, Veteran Engineering signed Amendment PS 14 and the Contracting Officer signed it on November 5, 2012. AR 59.

On August 30, 2012, the Army issued a Task Order request under the VETS GWAC, for IT services at Fort Dix (the "Task Order"). AR 219–20 (Task Order); AR 221 (9/10/12 Source Selection Plan). The Task Order was to be awarded on a "best-value basis," but requiring the

---

[3] The basic VETS GWAC is available at http://www.gsa.gov/portal/getMediaData?mediaId=152163 (last visited October 22, 2014).

[4] The GSA published the VETS Ordering Guide to "help ordering offices and industry partners use the VETS GWAC." AR 77; see also http://www.gsa.gov/portal/mediaId/150011/fileName/VETS_GWAC_Ordering_Guide.action (last visited October 22, 2014).

[5] In relevant part, the Service Contract Labor Standards provides that: "The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive Orders applicable to acquisitions of commercial items." 48 C.F.R. § 52.212-5(c).

Army to select the winning bid by weighing: price; technical approach; and past performance factors. AR 901. Technical approach and past performance together, slightly outweighed price in the Army's decision-making. AR 901; *see also* AR 439 (3). The expected performance period for the Task Order was to begin with a phase-in period of March 1–31, 2013, followed by an eleven-month base period of April 1, 2013 through February 28, 2014.[6] AR 495.

In September 2012, the Army amended the Task Order three more times. AR 248 (9/14/12 Amendment 1); AR 261 (9/19/12 Amendment 2); AR 285 (9/21/12 Amendment 3). Amendment 1 responded to contractors' questions about the Task Order. AR 248. Amendment 2 included FAR 52.222-41 (SCA) and FAR 52.222-53 (Fair Labor Standards Act—Price Adjustment (Multiple Year and Option Contracts) (Sept. 2009)), that already were incorporated into Veteran Engineering's VETS GWAC. AR 280; *see also* VETS GWAC at p. I-15–20. Pursuant to the SCA, the amended Task Order also identified "Supply Technician" as the only service employee class "expected to be employed under the contract." AR 281. Amendment 3 modified provisions not at issue here. *See* AR 285.

On October 4, 2012, Veteran Engineering and Innovative Management Concepts, Inc. ("IMC" or "Plaintiff") submitted proposals to the Army. AR 286–438.

On February 4, 2013, the Army issued an Award Memorandum explaining that four of the proposals submitted, including both Veteran Engineering and IMC, received an "Acceptable" technical evaluation, and had "relatively equal technical capability" and a "satisfactorily confident" evaluation on past performance. AR 490–91. IMC's $**REDACTED** proposal price was approximately **REDACTED%** lower than Veteran Engineering's $9,999,875.09 proposal price. AR 488–89.

On February 22, 2013, the Army awarded the Task Order to IMC. AR 492.

On March 8, 2013, Veteran Engineering filed a post-award protest with the General Accountability Office ("GAO") and the Army issued a stop work order. AR 860. On March 28, 2013, the GAO dismissed the protest, based on a notice of corrective action by the Army. *See Matter of Veteran Eng'g & Tech., LLC*, B-408070 (Mar. 28, 2013); AR 673 (GAO decision).

On May 1, 2013, the Army terminated the February 4, 2014 IMC contract award for convenience. Compl. ¶ 12; AR 674. That same day, IMC received an email from an Army contract specialist requesting a 120-day post-award extension to re-evaluate the proposals. AR 676. The corrective action consisted of reevaluating the proposals at a "'higher level review' [but] us[ed] the same Technical Evaluation Board (TEB) and Past Performance Evaluation Board (PPEB) which reevaluated all aspects of both offerors' proposals." AR 863.

On August 12, 2012, the Army awarded the Task Order to Veteran Engineering. AR 712–836. That same day, the Army issued a memorandum describing how it reviewed the competing proposals. AR 702–11. IMC and Veteran Engineering both received "Acceptable"

---

[6] The Task Order included two option years, followed by a one-month phase-out period in February 2016. AR 495.

ratings for their technical evaluation and "Very Relevant / Substantial Confidence" for their past performance evaluation. AR 707–08. And, IMC and Veteran Engineering "earned the highest overall combined non-price ratings." AR 709. The total evaluated price for IMC's proposal was approximately **REDACTED**% less than Veteran Engineering's. AR 703–04, 708. The Army explained that it selected Veteran Engineering's instead of IMC's, because:

> Veteran [Engineering's proposal] provides two more personnel (30 vs. 28) than does IMC's [proposal], or approximately 7% more manhours per year to perform the NEC-IT function. While both proposals received the same overall technical rating of "Acceptable" the difference in the amount of staffing provides a measurable difference in technical value between the two proposals. The extra staffing will provide swifter reaction times to sudden network or system administration problems by having more available manhours to draw on from the two locations that must be staffed. Additionally, their knowledge and experience with the Fort Dix facilities will generate further efficiencies that will benefit the [G]overnment.

AR 710.

On August 13, 2013, the Army notified IMC that it made the award to Veteran Engineering. Compl. ¶ 13. IMC requested a debriefing. Compl. ¶ 14. On August 22, 2013, IMC attended a debriefing session at Fort Dix where contracting officer Jeffrey Zeichner explained why the Army chose Veteran Engineering over IMC. Compl. ¶¶ 14–18.

On August 27, 2013, IMC filed a protest with the GAO alleging that the August 12, 2012 award to Veteran Engineering was based on unstated criteria and an improper evaluation. AR 858–67. On December 4, 2013, the GAO concluded that the benefit of two additional personnel was a sufficient basis, in light of the Army's stated evaluation factors, to affirm the Army's decision to award the Task Order to Veteran Engineering, and dismissed IMC's protest. *See Matter of Innovative Mgmt. Concepts, Inc.*, B-408070.2 (Comp. Gen.), 2013 WL 7389538, at *1, *4 (2013); AR 899–904 (sealed version of the 12/4/13 GAO Decision); AR 905–09 (published version of the 12/4/13 GAO Decision).

### III. PROCEDURAL HISTORY.

On February 4, 2014, IMC filed a Complaint in the United States Court of Federal Claims, alleging that the December 4, 2013 GAO decision violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, and the Competition In Contracting Act ("CICA"), 41 U.S.C. § 253. On February 6, 2014, the court dismissed the February 4, 2014 Complaint, pursuant to RCFC 12(b)(6), without prejudice for failure to state a claim. *See Innovative Mgmt. Concepts, Inc. v. United States*, 114 Fed. Cl. 257, 258 (2014) ("[T]he February 4, 2014 Complaint fails to set forth a viable claim for relief under RCFC 12(b)(6) and insufficiently pleads facts necessary for the court to conclude it has subject matter jurisdiction.").

On February 24, 2014, IMC filed a new, three-count Complaint in the United States Court of Federal Claims. Count I alleged that the Army's August 12, 2012 Task Order award violated the APA and CICA. Compl. ¶ 48. Count II alleged that the December 4, 2013 GAO

decision affirming the August 12, 2012 Task Order award violated CICA. Compl. ¶ 52. Count III alleged that the December 4, 2013 GAO decision also violated the APA. Compl. ¶ 55. Based on these alleged violations of law, IMC requested that the court permanently enjoin the Army's August 12, 2012 Task Order award. Compl. at p. 16.

On March 11, 2014, the Government filed the Administrative Record under seal. AR 1–909.

On April 1, 2014, Plaintiff filed a Motion For Judgment On The Administrative Record ("Pl. Mot."). On April 29, 2014, the Government filed a Consolidated Motion To Dismiss, a Response To Plaintiff's Motion For Judgment On The Administrative Record, and Cross-Motion For Judgment On The Administrative Record ("Gov't Resp."). On May 13, 2014, Plaintiff filed a Reply And Opposition To Defendant's Motion To Dismiss And Cross-Motion For Judgment On The Administrative Record ("Pl. Reply"). On May 27, 2014, the Government filed its Reply ("Gov't Reply").

## IV.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Pursuant to 28 U.S.C. § 1491(b)(1), the United States Court of Federal Claims has jurisdiction:

> To render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

*Id.*

On January 25, 1994, Congress enacted FASA that in relevant part, provides:

> (1) A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for—
>
> > (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or
> >
> > (B) a protest of an order valued in excess of $10,000,000.
>
> (2) Notwithstanding section 3556 of title 31, the Comptroller General of the United States shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

10 U.S.C. § 2304c(e).

As such, FASA authorizes the United States Court of Federal Claims only to adjudicate "a protest on the ground that the [task] *order* increases the scope, period, or maximum value of the contract under which the order is issued[.]" 10 U.S.C. § 2304c(e)(1)(A) (emphasis added). In other words, FASA confines the court's jurisdiction to adjudicate claims that challenge the underlying procurement vehicle, not any subsequent specific task order or award. *See SRA Int'l*, 766 F.3d at 1413.

Moreover, the United States Court of Appeals for the Federal Circuit has held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007). IMC did not challenge the terms of the 2012 VETS GWAC, but instead the August 12, 2012 Task Order award. Pl. Reply at 6 n.6 (stating that "IMC is not arguing that the solicitation was defective for including SCA-covered positions, but rather [that] the award was out-of-scope[.]"). The court has no alternative but to dismiss IMC's bid protest under these circumstances, as a matter of law.

Even assuming, *arguendo*, that the court had jurisdiction to adjudicate the claims alleged in the February 24, 2014 Complaint, Plaintiff's argument could not succeed, because Section B.4.5 rendered Veteran Engineering's proposal invalid. The Army's modifications to the VETS GWAC—which were incorporated prior to issuing the Task Order—superseded the original text. AR 34 (Amendment PS 13) ("The purpose of this modification is to "[u]pdate contract provisions/clauses . . . [and a]dd applicable contract provisions/clauses to Section 1."); AR 48 (Amendment PS 13) (incorporating the SCA).[7]

For these reasons, the court has determined that it does not have subject matter jurisdiction to adjudicate the claims alleged in the February 24, 2014 Complaint.

Because Plaintiff abandoned two of its three claims, and because the court does not have subject matter jurisdiction over the remaining claim, Plaintiff is not entitled to judgment on the Administrative Record.

---

[7] As the Government notes, such modifications are entirely proper. *See Lockheed Aircraft Serv. Co.*, 53 Comp. Gen. 412 (1973) ("[T]he absence from the [original] contract of a SCA clause does not render the contract illegal if after the contract award the Department of Labor decides that the SCA was applicable to the procurement[.]"). Here, the Army modified the Task Order prior to issuing it on August 30, 2012; thus, all parties were on notice that the SCA applied. AR 280–81 (relevant SCA clauses included in the 08/30/12 task order solicitation). IMC cannot claim that the award exceeded the scope of the VETS GWAC, which clearly incorporated SCA FAR clauses several months prior to the Task Order being issued.

**V.     CONCLUSION.**

For these reasons, the Government's April 29, 2014 Motion to Dismiss is granted. *See* RCFC 12(b)(1).  Plaintiff's Motion For Judgment On The Administrative Record is denied. Accordingly, the Clerk is directed to dismiss the February 24, 2014 Complaint.

**IT IS SO ORDERED.**

                                          s/ Susan G. Braden
                                          **SUSAN G. BRADEN**
                                          **Judge**